# No. 24-20347

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

LEXON INSURANCE COMPANY, INCORPORATED,

Plaintiff-Appellant

v.

CHEVRON U.S.A. INCORPORATED; SOJITZ ENERGY VENTURE,
INCORPORATED; BP AMERICA PRODUCTION COMPANY,

Defendants-Appellees

On Appeal from the United States District Court for the
Southern District of Texas, Houston, in Case No. 4:21-cv-990
Honorable Alfred H. Bennett, U.S. District Judge

## CHEVRON U.S.A. INC. AND BP AMERICA PRODUCTION COMPANY'S RESPONSE TO LEXON INSURANCE COMPANY, INC.'S PETITION FOR REHEARING EN BANC

Kelly Brechtel Becker
kbbecker@liskow.com
(LA Bar #27375)
Kathryn Z. Gonski
kzgonski@liskow.com
(LA Bar #33442)
**LISKOW & LEWIS**
Hancock Whitney Center
701 Poydras St., Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Michael David Rubenstein
mdrubenstein@liskow.com
(TX Bar #24047514, LA Bar #22860)
Jana L. Grauberger
jlgrauberger@liskow.com
(TX Bar #24047502, LA Bar #25066)
**LISKOW & LEWIS**
1001 Fannin St., Suite 1800
Houston, TX 77002
Telephone: (713) 651-2900
Facsimile: (713) 651-2908

*Counsel for Defendants-Appellees, Chevron U.S.A. Inc. and
BP America Production Company*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**<u>Plaintiff-Appellant:</u>**

Lexon Insurance Company

**<u>Counsel for Plaintiff-Appellant:</u>**

Adam J. Russ
Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan LLC
1001 Fannin Street, Suite 3850, Houston, TX 77002
Phone: (713) 333-5500

Armistead M. Long
Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan LLC
1015 St. John Street, Lafayette, LA 70501
Phone: (337) 287-0132

Kyle D. Gooch
Harris Beach PLLC
99 Garnsey Road, Pittsford, NY 14534
Phone: (585) 419-8800

Brian D. Ginsberg
Harris Beach PLLC
445 Hamilton Avenue, Suite 1206, White Plains, NY 10601
Phone: (914) 683-1200

**<u>Defendants-Appellees:</u>**

1. Chevron U.S.A. Inc.
2. BP America Production Company
3. Sojitz Energy Venture, Inc.

#6765590v1

**Counsel for Defendants-Appellees:**

Michael D. Rubenstein
Jana L. Grauberger
**LISKOW & LEWIS**
10001 Fannin St., Suite 1800
Houston, TX 77002
Telephone: (713) 651-2900
Facsimile: (713) 651-2908

Kelly Brechtel Becker
Kathryn Z. Gonski
**LISKOW & LEWIS**
Hancock Whitney Center
701 Poydras St., Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Robin B. Cheatham
Leigh Ann Schell
Scott R. Cheatham
G. Robert Parrott
**ADAMS AND REESE, LLP**
Hancock Whitney Center
701 Poydras St., Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210

#6765590v1

**District Court Judge Rendering Decision Below:**

Honorable Alfred H. Bennett, Judge,
U.S. District Court for the Southern District of Texas, Houston

**Magistrate Judge Issuing Memorandum and Recommendation:**

Honorable Peter Bray, Magistrate Judge,
U.S. District Court for the Southern District of Texas, Houston

/s/ Kelly Brechtel Becker

COUNSEL FOR DEFENDANTS-APPELLEES
CHEVRON U.S.A. INC. AND BP AMERICA
PRODUCTION COMPANY

#6765590v1

# TABLE OF CONTENTS

**PAGE #**

CERTIFICATE OF INTERESTED PERSONS...........................................................i

TABLE OF CONTENTS ........................................................................iv

TABLE OF AUTHORITIES....................................................................v

I.    INTRODUCTION .................................................................................1

II.    ARGUMENT...............................................................................4

    A.    Federal common law does not apply under OCSLA. ...........................4

    B.    Even if federal common law applied, the result would be the same..........................................................................................11

    C.    The panel's decision upholds the role of a surety. ..............................12

III.    CONCLUSION.............................................................................13

CERTIFICATE OF SERVICE .................................................................15

CERTIFICATE OF COMPLIANCE ....................................................16

#6765590v1

# TABLE OF AUTHORITIES

**Cases** <span style="float:right">PAGE #</span>

*Alexander v. Chevron USA Inc.*,
    623 F. Supp. 1462 (W.D. La. 1985) ......................................................6

*Am. Surety Co. of New York v. Lewis State Bank*,
    58 F.2d 559 (5th Cir. 1932) .................................................................11

*Chevron Oil Co. v. Huson*,
    404 U.S. 97 (1971), *overruled in part on other grounds by*
    *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86 (1993)............................9, 10

*City of Milwaukee v. Illinois & Michigan*,
    451 U.S. 304 (1981)...............................................................................10

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)...................................................................................8

*Fontenot v. Dual Drilling Co.*,
    179 F.3d 969 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 616 (1999) ............... 3, 5, 6

*Frazier v. Columbia Gas Dev. Corp.*,
    596 F. Supp. 429 (W.D. La. 1984) ........................................................6

*Greer v. Servs., Equip. and Eng., Inc.*,
    593 F. Supp. 1075 (E.D. Tex. 1984)...................................................4, 7

*Gulf Offshore Co. v. Mobil Oil Corp.*,
    453 U.S. 473 (1981).............................................................................2, 7

*Gulf Offshore Co. v. Mobil Oil Corp.*,
    628 S.W.2d 171 (Tex. App.—Houston [14th Dist.] 1982, writ refused n.r.e.),
    *cert. denied*, 103 S. Ct. 259 (1982) ....................................................2, 8

*Hebert v. Kerr-McGee Corp.*,
    618 F. Supp. 767 (W.D. La. 1985) ........................................................6

*Lexon Ins. Co. v. FDIC*,
    7 F.4th 315 (5th Cir. 2021) ..................................................................13

*Matte v. Zapata Offshore Co.*,
   784 F.2d 628 (5th Cir. 1986), *cert. denied* 107 S. Ct. 247 (1986) ............... 3, 5, 6

*McCall v. Columbia Gas Dev. Corp.*,
   635 F. Supp. 49 (W.D. La. 1986) ................................................................6

*Parker Drilling Management Services, Ltd. v. Newton*,
   587 U.S. 601 (2019) .........................................................................2, 7

*Paul v. United States*,
   371 U.S. 245 (1963) ..............................................................................5

*Pearlman v. Reliance Insurance Co.*,
   371 U.S. 132 (1962) ........................................................................ 2, 7, 8

*Rodrigue v. Aetna Cas. Surety Co.*,
   395 U.S. 352 (1969) ................................................................... passim

*Tex. Water Supply Corp. v. R.F.C.*,
   204 F.2d 190 (5th Cir. 1953) ..............................................................12

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981) ..........................................................................8, 9

*United States v. Standard Oil Co.*,
   332 U.S. 301 (1947) .............................................................................9

*Walter Oil & Gas Corp. v. NS Group, Inc.*,
   867 F. Supp. 549 (S.D. Tex. 1994) .....................................................6

**Statutes**

28 U.S.C. § 1331 ....................................................................................4

43 U.S.C. § 1333(a)(1) ........................................................................ 7

43 U.S.C. § 1333(a)(2)(A) ..................................................................6, 7

#6765590v1

## Other Authorities

Donald T. Kramer, Annotation,
*Construction and Application of § 4 of Outer Continental Shelf Lands Act of 1953 (43 U.S.C.A. § 1333), Relating to Laws Applicable to Subsoil and Seabed of Outer Continental Shelf and Artificial Islands and Fixed Structures Erected Thereon*, 163 A.L.R. Fed. 1, 47 (2000) ...................................7

Restatement (Third) of Suretyship & Guaranty,
§§ 21(1), 28(1)(b), 53(3), 59 (1996) ..............................................................4, 12

S. Rep. No. 411, at 23........................................................................... 2, 5, 8

## Rules

5th Cir. I.O.P. ...................................................................................................12

Fed. R. App. P. 40 ............................................................................................12

## Regulations

30 C.F.R. § 556.710 ...........................................................................................1

## I.     INTRODUCTION

Lexon Insurance Company, Inc. ("Lexon") seeks rehearing *en banc* from the panel's decision, which held that Lexon, who was required to forfeit over $11 million in bonds to the federal government to fund oil and gas decommissioning work on the Outer Continental Shelf, is not entitled to reimbursement from Chevron U.S.A. Inc. ("Chevron") and BP America Production Company ("BP"), former leaseholders. The panel correctly concluded that Lexon was not entitled to reimbursement because Lexon was the surety for Linder, the primary obligor for the decommissioning work, whereas Chevron and BP were secondary obligors. The panel recognized that Linder was the primary obligor for two reasons: (1) it was the current lease operator,[1] and (2) it contractually assumed responsibility for all decommissioning obligations and agreed to indemnify the former leaseholders for any liability relating to those obligations.[2] The panel also correctly applied Louisiana law to the issue before it, as "both the Supreme Court and this circuit have consistently recognized that state law, not 'federal common law,' applies as surrogate federal law under the OCSLA [Outer Continental Shelf Lands Act]." Panel Op., p. 8.

---

[1] Panel Op. at n.1 (citing 30 C.F.R. § 556.710, which provides that an assignor may be liable for decommissioning obligations "if [its] assignee or any subsequent assignee fails to perform…").

[2] Panel Op., p. 1 ("Linder Oil in turn agreed to assume all decommissioning obligations under the lease and to indemnify Chevron for any related liability."); *id.* at 1-2 ("Linder Oil agreed to release Sojitz from all decommissioning obligations arising under the lease and to indemnify it for any related claims.").

#6765590v1

Lexon contends that the result would have been different had the panel applied federal common law. On this basis, Lexon seeks rehearing *en banc*, claiming that the panel's conclusion that federal common law does not apply under OCSLA conflicts with three Supreme Court decisions: *Parker Drilling Management Services, Ltd. v. Newton*, 587 U.S. 601 (2019), *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981), and *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132 (1962). There is no conflict, however, as none of these cases applied federal common law under OCSLA. *See Parker Drilling*, 587 U.S. at 616-17 (finding that the Fair Labor Standards Act and its regulations applied); *Gulf Offshore*, 453 U.S. at 488 (remanding to state court to consider whether federal common law applied and subsequently denying cert after state court determined it did not: *Gulf Offshore Co. v. Mobil Oil Corp.*, 628 S.W.2d 171 (Tex. App.—Houston [14th Dist.] 1982, writ refused n.r.e.), *cert. denied*, 103 S. Ct. 259 (1982)); *Pearlman*, 371 U.S. 132 (case did not involve OCSLA).

Nor does the panel's decision conflict with any other case. For decades, the Supreme Court and this Court have consistently held that under OCSLA, unless a federal statute or regulation governs the issue, state law—not federal common law—applies. *See*, *e.g.*, *Rodrigue v. Aetna Cas. Surety Co.*, 395 U.S. 352, 357-58 (1969) (quoting Senate Committee report, S. Rep. No. 411, at 23, stating that OCSLA "adopts State law as Federal law, to be used when Federal statutes or regulations of

the Secretary of the Interior are inapplicable."); *Fontenot v. Dual Drilling Co.*, 179 F.3d 969, 977 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 616 (1999) ("Following the lead of the Supreme Court in *Rodrigue* and *Huson*, our Circuit has consistently rejected attempts of litigants to have 'federal common law' override rules of Louisiana tort law in actions arising on fixed platforms on the Outer Continental Shelf."); *Matte v. Zapata Offshore Co.*, 784 F.2d 628, 630 (5th Cir. 1986), *cert. denied* 107 S. Ct. 247 (1986) ("As the Supreme Court made abundantly clear in *Rodrigue* [], Congress intended that the law of the adjacent state would become surrogate federal law on fixed platforms on the Shelf, to the exclusion of admiralty and common law."). The panel correctly followed this uniform precedent in finding that federal common law does not apply here.

Thus, while Lexon suggests that *en banc* consideration is warranted due to the "potentially wide-ranging implications" of the panel's "decision setting aside the entire body of common law in favor of state law," Pet., p. 13, the Supreme Court and this Court have said that this result is required under OCSLA—the entire body of federal common law must yield to state law if there is no federal statute or regulation on point. Indeed, Lexon does not cite a single decision that has applied federal common law under OCSLA.

Moreover, the premise of Lexon's pitch for rehearing—that the outcome would be different under theories of equitable subrogation if federal common law

applied—is also wrong. Lexon relies exclusively on federal common law authorities concerning subrogation rights against *mutual*, co-equal obligors. Under the undisputed facts of this case, however, Lexon, Chevron, and BP are not mutual obligors. As Linder's surety, Lexon agreed to secure the performance of the primary obligor. Thus, when Linder defaulted, Lexon stood in Linder's shoes as the primary obligor. In accordance with the pertinent regulations and the parties' contracts, Chevron and BP's liability remained secondary. And under well-settled principles of suretyship and subrogation, a primary obligor has no subrogation claim against a secondary obligor. *See*, *e.g.*, Restatement (Third) of Suretyship & Guaranty, §§ 21(1), 28(1)(b), 53(3), 59 (1996). The extraordinary remedy of rehearing *en banc* should not be expended when the outcome of the decision remains the same. Lexon's petition for rehearing *en banc* should be denied.

## II.     ARGUMENT

### A.     Federal common law does not apply under OCSLA.

Lexon's argument that OCSLA looks to federal common law before turning to state law finds no support in the statute itself or any case interpreting it. Tellingly, Lexon resorts to other statutes (Pet., p. 7, citing 28 U.S.C. § 1331) and the "context," "textual clues," and "design" of OCSLA to aid its interpretation. Pet., pp. 7-9. But in *Rodrigue*—the "seminal case in determining what law applies under OCSLA"[3]—

---

[3] *Greer v. Servs., Equip. and Eng., Inc.*, 593 F. Supp. 1075, 1077-78 (E.D. Tex. 1984).

the Supreme Court looked to the Senate Committee report at the time of OCSLA's introduction, which explained in no uncertain terms: "Paragraph (2) adopts State law as Federal law, to be used when ***Federal statutes or regulations of the Secretary of the Interior*** are inapplicable." 395 U.S. at 357-58 (quoting S. Rep. No. 411, at 23) (Emphasis added).[4] Finding that no federal statute applied to the wrongful death claims at issue, the *Rodrigue* Court concluded that state law governed under OCSLA. *Id.* at 366.

Following the Court's decision in *Rodrigue*, this Circuit has consistently held—as the panel did—that federal common law does not apply under OCSLA. *See Fontenot*, 179 F.3d at 977 ("Following the lead of the Supreme Court in *Rodrigue* and *Huson*, our Circuit has consistently rejected attempts of litigants to have 'federal common law' override rules of Louisiana tort law in actions arising on fixed platforms on the Outer Continental Shelf."); *Matte*, 784 F.2d at 630 ("As the Supreme Court made abundantly clear in *Rodrigue* [], Congress intended that the law of the adjacent state would become surrogate federal law on fixed platforms on the Shelf, ***to the exclusion of*** admiralty and ***common law***.") (Emphasis added). The

---

[4] While this clear statement of legislative intent alone undermines Lexon's arguments that federal common law should apply based on the statute's "context," "textual clues," and "design," it is worth noting that Lexon incorrectly claims as part of its "context" argument that "[t]here is no suggestion that federal common law would be inapplicable in any other federal enclave within a State." Pet., p. 8. The Supreme Court has expressly stated that Congress has "'exclusive' legislative power" over federal enclaves. *See Paul v. United States*, 371 U.S. 245, 263 (1963).

Supreme Court declined petitions for certiorari from these decisions. *See Fontenot*, 120 S. Ct. 616; *Matte*, 107 S. Ct. 247.

The district courts within this Circuit are also in agreement that under OCSLA, state law, not federal common law, applies when no federal statute or regulation governs the issue. *See Walter Oil & Gas Corp. v. NS Group, Inc.*, 867 F. Supp. 549, 553 (S.D. Tex. 1994) ("After a careful reading of § 1333(a)(2)(A), as well as relevant Federal case law interpreting this statute, this Court has determined that the phrase 'other Federal laws' in § 1333(a)(2)(A) refers not to Federal common law, but rather to Federal statutory law."); *McCall v. Columbia Gas Dev. Corp.*, 635 F. Supp. 49, 51 n.1 (W.D. La. 1986) (same); *Alexander v. Chevron USA Inc.*, 623 F. Supp. 1462, 1464 n.4 (W.D. La. 1985) (same); *Hebert v. Kerr-McGee Corp.*, 618 F. Supp. 767, 769 (W.D. La. 1985) (same); *Frazier v. Columbia Gas Dev. Corp.*, 596 F. Supp. 429, 431 (W.D. La. 1984) ("Of utmost importance to us in our analysis is the phrase 'and not inconsistent with this Act or other Federal laws and regulations of the Secretary.' 43 U.S.C. § 1333(a)(2)(A). This language is not ambiguous; we think its meaning is clear. State law must apply except where it is inconsistent with the OCSLA itself, other Federal *statutes* or regulations promulgated by the Secretary. This interpretation is compelled by the use of the word 'laws' (as opposed to the word 'law' which might imply a body of law—federal common law) and by the use of the correlative word 'other', referring to this act or other acts. Certainly this word

#6765590v1

'laws' does not refer to federal common law. We find that the words 'other Federal laws' refers to other Federal acts or statutes."); *Greer*, 593 F. Supp. at 1077-78 (under *Rodrigue*, state law, not federal common law, applied under OCSLA).[5]

Lexon's depiction of the panel's decision as a rogue outlier that sets aside an entire body of law that previously applied in OCSLA cases is belied by this established precedent. Lexon itself fails to cite a single decision applying federal common law under OCSLA.

Moreover, Lexon erroneously suggests that a conflict exists between the panel's decision and the Supreme Court decisions in *Parker Drilling*, *Gulf Offshore*, and *Pearlman*. There is no conflict. In *Parker Drilling*, the Court did not consider whether federal common law applied; instead, consistent with *Rodrigue*, the Court held that state law did not apply because a federal statute, the Fair Labor Standards Act, and its regulations governed the issue. 587 U.S. at 616-17. In *Gulf Offshore*, the Court did not hold that federal common law applied, but remanded the matter to the Texas appellate court to consider the question. 453 U.S. at 488. On remand, the Texas court held that the federal common law rule at issue was not "applicable federal law"

---

[5] *See also* Donald T. Kramer, Annotation, *Construction and Application of § 4 of Outer Continental Shelf Lands Act of 1953 (43 U.S.C.A. § 1333), Relating to Laws Applicable to Subsoil and Seabed of Outer Continental Shelf and Artificial Islands and Fixed Structures Erected Thereon*, 163 A.L.R. Fed. 1, 47 (2000) ("It seems well settled that the phrase 'other federal laws' in 43 U.S.C.A. § 1333(a)(2)(A) refers not to federal common law, but instead only to federal statutory law."); *id.* ("The term 'federal law' in the section of OCSLA (43 U.S.C.A. § 1333(a)(1)) providing that state laws apply to actions under OCSLA to the extent that they are not inconsistent with federal laws refers not to the federal common law but to federal statutory laws.") (collecting cases).

in the case, and the suit was properly governed by "Louisiana state law applied as federal law under the OCSLA." 628 S.W.2d at 174. Notably, the Supreme Court then denied a petition for certiorari from the Texas court's ruling. 103 S. Ct. 259. Finally, *Pearlman* was a case involving a surety and subrogation issues in a construction dispute under the Miller Act—the case had nothing to do with OCSLA, much less whether OCLSA looks to federal common law. 371 U.S. 132.

The panel's decision therefore does not conflict with any prior precedent. Lexon's position, however, would require this Court to overturn longstanding, prior precedent. There is no basis to do so, especially when the Supreme Court in *Rodrigue* expressly looked to the legislative intent of OCSLA and pointed specifically to Congress's reference only to "***Federal statutes or regulations of the Secretary of the Interior***…." 395 U.S. at 357-58 (quoting S. Rep. No. 411, at 23) (Emphasis added).

The steadfast rejection of federal common law is also consistent with the history of OCSLA and the settled principle that federal common law applies only in limited circumstances, which are not present here. As the Supreme Court has often stated: "There is, of course, 'no federal general common law.'" *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Nevertheless, the Court has recognized the need and authority in some limited areas to formulate what has come to be known as 'federal

common law.'" *Id.* (quoting *United States v. Standard Oil Co.*, 332 U.S. 301 (1947)). These "few and restricted" instances fall into two categories: "those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law." *Id.* (citations omitted). Neither is present here.

First, as the Supreme Court explained in *Rodrigue*, while Congress initially considered whether maritime law—where federal common law does apply—would govern OCSLA cases, it ultimately concluded that it was "inapt" and "unsuited" for the task. 395 U.S. at 364-65. Rather, "the 'special relationship between the men working on these artificial islands and the adjacent shore to which they commute' favored application of state law with which these men and their attorneys would be familiar." *Chevron Oil Co. v. Huson*, 404 U.S. 97, 103 (1971), *overruled in part on other grounds by Harper v. Va. Dep't of Tax'n*, 509 U.S. 86 (1993) (quoting *Rodrigue*, 395 U.S. at 365). In reaching this conclusion, "Congress specifically rejected national uniformity" in OCSLA cases and instead "specifically provided for the application of state remedies." *Id.* at 104. Congress's explicit determination that OCSLA cases do not fall within the category of those in which "a federal rule of decision is necessary to protect uniquely federal interests" mandates the exclusion of federal common law.

The second instance—"those in which Congress has given the courts the power to develop substantive law"—is also absent in OCSLA cases.  The Supreme Court addressed this precise issue in *Huson*, explaining that in OCSLA: "Congress made clear provision for filling in the 'gaps' in federal law [with state law]; it did not intend that federal courts fill in those 'gaps' themselves by creating new federal common law." *Id.* at 104-05; *see also id.* at n. 8 (reiterating its holding that "federal courts should not create interstitial federal common law when the Congress has directed that a whole body of state law shall apply."); *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 314 (1981) ("If state law can be applied, there is no need for federal common law; if federal common law exists, it is because state law cannot be used."). Therefore, contrary to Lexon's suggestion, there is no legitimate basis to apply federal common law to the exclusion of state law under OCSLA.

Lexon's request for *en banc* consideration fails at every turn. The panel's decision does not conflict with any Supreme Court decision. The panel correctly held, under established precedent, that state law, not federal common law, applies as surrogate federal law under OCSLA. The panel's decision is also consistent with the history and express legislative intent of OCSLA, as well as settled law on when federal common law applies (and when it does not). Lexon's petition should be denied.

-10-

**B.      Even if federal common law applied, the result would be the same.**

Lexon incorrectly contends in its petition: "Applying Louisiana law, the panel construed [Lexon's subrogation] rights to be narrower than under federal common law—a difference that was dispositive to the petitioner's claims here." Pet., p. 2. Lexon fails to show, however, how its rights would be any different under federal common law. They would not.

Lexon's entire argument is premised on the general principle that a paying surety is always subrogated to the rights of the creditor, which, according to the cases it cites, can include rights against third parties. But Lexon provides no authority permitting a blanket right to subrogation against third parties regardless of the circumstances. In the cases on which Lexon relies, the surety's right to reimbursement was recognized against *mutual* obligors. *See*, *e.g.*, *Am. Surety Co. of New York v. Lewis State Bank*, 58 F.2d 559, 560 (5th Cir. 1932) (Pet., p. 14) ("A surety is indeed a favorite of equity, which … will subrogate him after he pays, liberally and fully, as against others ***primarily liable*** on the debt.") (emphasis added). As the panel correctly recognized, in light of the applicable federal regulations, Linder's contractual assumption of the decommissioning obligations, and Lexon's status as Linder's surety, Lexon, Chevron, and BP were *not mutual* obligors. Lexon was the surety for Linder, the primary obligor. Once Linder defaulted, Lexon became the primary obligor. Chevron and BP, however, remained secondary obligors. Under

-11-

these circumstances, the Restatement (Third) of Suretyship & Guaranty (1996) confirms that Lexon has no right to reimbursement from Chevron and BP. *See* §§ 21(1), 28(1)(b), 53(3), 59 (when the circumstances demonstrate that one secondary obligor should perform or bear the cost of performance—here, Lexon, because it secured the performance of Linder, the principal obligor—that obligor lacks any claim for reimbursement against the other secondary obligors).

Rehearing *en banc* is an extraordinary and unfavored procedure. Fed. R. App. P. 40 & 5TH CIR. I.O.P. It should not be utilized in a case such as this one, where the outcome would remain the same.

**C.     The panel's decision upholds the role of a surety.**

Finally, Lexon erroneously argues that the panel's decision will disrupt the surety market by causing uncertainty and "more risk for sureties." Pet., p. 15. But a surety such as Lexon must bear the risk that it bargained for—that its principal is unable to pay. That is the essence of suretyship. *See Tex. Water Supply Corp. v. R.F.C.*, 204 F.2d 190, 194 (5th Cir. 1953) (explaining the role of a surety: "the surety undertakes to pay if the principal does not … the surety becomes liable as soon as the debt of the principal matures and is unpaid . . . A surety makes a direct promise to perform the principal's obligation if he fails to perform it as he agreed to do."). Lexon can cite to no principle that a surety must never bear the risk of loss.

Lexon agreed to post bonds in favor of the government, acting as the surety for Linder. Lexon was aware that Linder was the current lease operator and that Linder contractually agreed to assume the prior leaseholders' responsibility for the decommissioning obligations at issue. Lexon sought to minimize its risk by requiring Linder to provide collateral for the bonds. Unfortunately for Lexon, that collateral was in the form of two letters of credit that the FDIC repudiated after the bank that issued the letters of credit failed.[6] Ultimately, that Lexon was required to satisfy its principal's obligation without recourse is a risk that a surety undertakes. It is not a basis to upend established precedent under OCSLA or create a remedy that does not exist under any legal theory.

## III.    CONCLUSION

The panel's decision correctly followed existing, established precedent in applying Louisiana law as surrogate federal law under OCSLA. Lexon provides no basis for this Court to grant rehearing *en banc*. Its petition should be denied.

---

[6] Lexon's lawsuit challenging the FDIC's repudiation of its collateral was dismissed by the district court, which this Court affirmed in *Lexon Ins. Co. v. FDIC*, 7 F.4th 315 (5th Cir. 2021).

#6765590v1

Respectfully submitted,

 /s/ Kelly Brechtel Becker
Michael David Rubenstein
mdrubenstein@liskow.com
(TX Bar #24047514, LA Bar #22860)
Jana L. Grauberger
jlgrauberger@liskow.com
(TX Bar #24047502, LA Bar #25066)
**LISKOW & LEWIS**
1001 Fannin St., Suite 1800
Houston, TX 77002
Telephone: (713) 651-2900
Facsimile: (713) 651-2908

Kelly Brechtel Becker
kbbecker@liskow.com
(LA Bar #27375)
Kathryn Z. Gonski
kzgonski@liskow.com
(LA Bar #33442)
**LISKOW & LEWIS**
Hancock Whitney Center
701 Poydras St., Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

***Counsel for Defendants-Appellees,
Chevron U.S.A. Inc. and BP America
Production Company***

#6765590v1

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on October 16, 2025, on all registered counsel of record, and has been transmitted to the Clerk of Court.

        /s/ Kelly Brechtel Becker

**COUNSEL FOR DEFENDANTS-APPELLEES CHEVRON U.S.A. INC. AND BP AMERICA PRODUCTION COMPANY**

-15-

## **CERTIFICATE OF COMPLIANCE**

1.   This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains **3,327** words as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2108 in Times New Roman font, 14-point type face.


 /s/ Kelly Brechtel Becker
COUNSEL FOR DEFENDANTS-APPELLEES
CHEVRON U.S.A. INC. AND BP AMERICA
PRODUCTION COMPANY

#6765590v1